UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action No.: 2:04-430-PMD |
| v. | ) | |
| | ) | |
| HAROLD LINDSEY, JR., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court upon Defendant Harold Lindsey, Jr.'s ("Defendant" or "Lindsey") Motion for a *Franks* Hearing[1] and to Suppress Evidence obtained in violation of Defendant's rights under the Fourth, Fifth, and Sixth Amendments. The Government filed a Response in Opposition on March 11, 2013. The Court held a hearing on March 19, 2013, wherein the Court heard testimony from Janice Gladden, the landlord of the searched residence and Defendant's aunt, as well as testimony from the detectives[2] who worked the case.[3] At the conclusion of the hearing, the Court ordered the record open until March 25, 2013, to allow the parties to file any additional briefs or exhibits in support of their prospective positions. The Government filed a Supplemental Response in Opposition on March 22, 2013. Defendant's attorney, Federal Public Defender Ann Walsh, filed a supplemental motion and requested another hearing to allow for testimony in support of said motion. The Court held a hearing on April 16, 2013, wherein the Court heard testimony from Wendy Bryar, Walsh's paralegal, and

---

[1] Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).
[2] Detective Nice was assigned a surveillance position, and therefore, had "eyes on" the residence in question. Detective Peters was the individual who typed up the search warrant and search warrant affidavit, and he also helped search the residence in question.
[3] The Court also heard testimony from Lindsey's cousin, Janelle Turner, who lived in the residence in question with Lindsey during the time of this incident.

1

listened to oral argument regarding the merits of Defendant's supplemental motion. After a thorough review of the record, as well as the testimony given at the hearings, the Court denies Defendant's Motion to Suppress Evidence.

## **BACKGROUND**

The investigation that led to this case started back in 2003 when a confidential informant ("CI") told police that he could buy cocaine from a black male that he knew as "Baller." The CI advised police that he and Baller agreed to meet at a Chinese restaurant on Spruill Avenue near Token Street in North Charleston on January 15, 2003. The CI knew the area where Baller lived—Spruill and Iris Street in North Charleston—and told police that Baller drove a light blue Lincoln Continental. Police found a car similar to that description parked in the driveway of 1912 Orvid Street in North Charleston. The CI also told the police that the black Chevrolet parked in front of 1912 Orvid Street belonged to Baller. Based on this information, police began surveillance of 1912 Orvid Street, and according to Detective Drake's incident report, Detective Nice saw a black male exiting what was later determined to be 1912 B Orvid Street and entering the light blue Lincoln. Detective White, who was serving in an undercover capacity with the CI, indicated in his incident report that the CI pointed out the Lincoln as it was coming down Spruill Avenue and identified the driver to be the subject "Baller." Detective White stated that he then relayed to other metro detectives over the radio that the subject was pulling into the predetermined location. According to Detective Drake's report, Baller, who was the driver and sole occupant of the Lincoln, was observed throwing a clear plastic bag containing a white substance as detectives closed in on the vehicle. Detective White's report states that Baller exited his vehicle, and as detectives started to approach him, he ran inside the Chinese restaurant where he was arrested. Upon searching his person, police found approximately 14.7 grams of an

2

off-white rock-like substance, which field-tested presumptive for cocaine and was in crack form. The substance discarded from the Lincoln was eventually retrieved by Detective Williams, who immediately recognized it as being consistent with cocaine. The substance field-tested presumptive for cocaine and had an approximate weight of 67.2 grams. After arresting Baller, who was later identified as Defendant Harold Lindsey, police obtained a search warrant for 1912 B Orvid Street. The search warrant and search warrant affidavit (hereinafter referred to only as "affidavit") were typed up by Detective Peters. Pursuant to the search, drugs and guns were seized.

On April 4, 2004, the Government filed a three-count indictment against Defendant charging him with possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (Count 1); possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) (Count 2); possession with intent to distribute a quantity of cocaine and marijuana and 50 grams or more of cocaine base (commonly known as "crack" cocaine), all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 841(b)(1)(D) (Count 3). After being indicted, Defendant failed to appear for court, and a warrant for his arrest was issued on May, 7, 2004. Defendant was not arrested until September 4, 2012. On February 22, 2013, Walsh filed a Motion for a *Franks* Hearing and to Suppress Evidence seized from the residence.

## DISCUSSION

### I. Defendant's Motion for a *Franks* Hearing & to Suppress Evidence seized from the residence.

#### A. *Franks* Hearing Request

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that in certain narrow circumstances a defendant may go beyond the facial sufficiency of an affidavit

3

supporting a warrant and challenge the truthfulness of a factual statement made therein. The rationale behind the rule is clear:

> Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment.

*Id.* at 165 (citations omitted). The Court was careful, however, to avoid creating a rule that would make evidentiary hearings into an affiant's veracity commonplace, obtainable on a bare allegation of bad faith. It crafted, therefore, a rule of very limited scope. Under *Franks*, a defendant must satisfy a two-pronged test to be entitled to an evidentiary hearing.

First, a defendant must make a "substantial preliminary showing" that the affidavit contained an actual falsity, and that the falsity was "included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth." *Id.* at 155-156. Second, the court must determine that the offending information was essential to the probable cause determination. *Id.* These allegations cannot be merely conclusory; rather, they must be accompanied by a detailed offer of proof. *Id.* at 171. A defendant must identify the specific portions of the affidavit that he claims are false and show why they are false. *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008). The defendant "must also furnish affidavits or sworn or otherwise reliable statements of witnesses or explain their absence" in order to meet his burden and be entitled to a hearing. *Id.* (quoting *Franks*, 438 U.S. at 171). "The burden of making the necessary showing is thus a heavy one to bear." *Id.*

### 1.    "Substantial preliminary showing"

Defendant argues that the statement in the affidavit alleging that "Charleston County Detectives observed Harold Lindsey Jr. leave the above residence [1912 B Orvid Street] . . ." is false or that detectives trespassed on the property to observe Defendant leaving the residence.

4

He states that it would have been impossible for the detectives to observe him leaving the residence without trespassing on 1912 Orvid Street owned (then and now) by Janice Gladden, who did not give police permission to enter her property. In support of this claim, Defendant's attorney filed a sworn affidavit wherein she states that "a person in the front of 1912 Orvid Street cannot see the entrance to 1912 ½[4] Orvid Street, nor the back door to 1912 Orvid Street." Walsh Aff. ¶ 5. Walsh also states that Janice Gladden told Walsh that she did not give police permission to be on her property. In addition to this affidavit, Defendant produced photos of both 1912 Orvid Street and 1912 B Orvid Street. Defendant argues that this fact—that police observed him leave 1912 B Orvid Street—is the only fact in the affidavit connecting him to that residence, and if stricken from the affidavit, probable cause does not exist.

Defendant relies on *United States v. Tate*, 524 F.3d 449 (4th Cir. 2008). In *Tate*, a Baltimore City Police Department officer applied for and obtained a search warrant to search Tate's residence for drugs and related items. *Id.* at 450–51. The search warrant application was based on a trash pull conducted by the officer, in which he discovered baggies containing suspected marijuana, hollowed out cigars, and mail bearing Tate's address. *Id.* at 451. During the execution of the search warrant, officers located a gun in the residence and charged Tate with being a felon in possession of a firearm. *Id.* Tate unsuccessfully requested that the district court grant a *Franks* hearing and his motion to suppress. *Id.* He subsequently pled guilty, and the court sentenced him to seventy-eight months in prison. *Id.* Tate's plea agreement allowed him to appeal the district court's denial of a *Franks* hearing and his motion to suppress; therefore, he

---

[4] At the hearing, it was established pursuant to county records that the residence behind 1912 Orvid Street is not listed as 1912 ½ Orvid Street or 1912 B Orvid Street; but in fact, the whole plat is listed as 1912 Orvid Street. *See* Def.'s Exh. 13. Additionally, Walsh stated that she was told in an email from the zoning office of North Charleston that the address of the back residence could not be located, but the 911 database has the address as 1912 B Orvid Street. *See* Def.'s Exh. 14. As such, the Court will refer to the back residence as 1912 B Orvid Street hereinafter.

5

appealed those issues to the Fourth Circuit. *Id.* at 451, 453. Tate claimed that the officer applying for the search warrant intentionally misled the state judge who issued the warrant "by deliberately *omitting* facts about the location of the trash." *Id.* at 451 (emphasis in original). Tate offered evidence that the trash was not abandoned and in a public place; rather, it was located near the back steps of his house, within his fenced-in backyard. *Id.* at 451–52. Tate was also able to show that the officer omitted language he used in another search warrant affidavit that was similarly based on the results of a trash pull. *Id.* at 456. In that affidavit, unlike the affidavit submitted in Tate's case, the officer described the trash as being "at the typical location for pick-ups." *Id.* Thus, the other affidavit revealed that the officer was aware of the requirements for a valid trash search, yet he omitted this information in Tate's case. *Id.*

> The Fourth Circuit held:
>
> As we explained in [*United States v. Colkey*, 899 F.2d 297 (4th Cir.1990)], an affidavit offered to procure a search warrant "cannot be expected to include . . . every piece of information gathered in the course of an investigation." *Id.* at 300. And because every piece of information cannot be expected to be included, the very process of selecting facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information. Certainly, such intentional omissions do not satisfy the requirement of *Franks.* As we stated in *Colkey*, "If, as the district court held, this type of 'intentional' omission is all that *Franks* requires, the *Franks* intent prerequisite would be satisfied in almost every case." *Id.* Accordingly, merely showing an intentional omission of a fact from a warrant affidavit does not fulfill *Franks'* requirements. *See id.* at 301; *see also United States v. Shorter*, 328 F.3d 167, 170–71 (4th Cir. 2003).
>
> To satisfy the *Franks* intentional or reckless falsity requirement for an *omission,* the defendant must show that facts were omitted "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *Colkey*, 899 F.2d at 300 (internal quotation marks omitted). Stated otherwise, the omission must be *"designed to mislead"* or must be made *"in reckless disregard of whether [it] would mislead." Id.* at 301.

*Tate*, 524 F.3d at 455 (emphasis in original). The Fourth Circuit found that Tate "carried his burden of making a substantial preliminary showing that [the officer] knowingly and

6

intentionally, or with reckless disregard for the truth, omitted a material statement in the affidavit he offered in support of the warrant to search Tate's residence." *Id.* at 457. The Fourth Circuit then vacated Tate's conviction and remanded the case for a *Franks* hearing. *Id.*

Defendant argues that similarly to *Tate*, the information in the affidavit was false, based on illegal conduct, and contained material misrepresentations. Lindsey, like Tate, asserts that a trespass was committed and that the result of the trespass—observing him leave the residence—was necessary to a showing of probable cause. In *Tate*, the Fourth Circuit found significant the Defendant's evidence (i.e., another affidavit prepared by the agent in a trash search case) that the agent knew the requirements for a constitutional trash search, and may have deliberately omitted certain language from his affidavit to mislead the issuing judge. Here, Lindsey is not explicitly alleging nor has he produced evidence that in similar instances Charleston detectives (or specifically Detective Nice) include their surveillance location in the affidavit, so as to suggest that this fact was deliberately omitted to mislead the Magistrate. Instead of an issue as to an *omitted* fact, as was the case in *Tate*, Lindsey is challenging the accuracy of an affirmative statement made by Detective Nice over the radio to Detective Peters, who typed up the affidavit. *See Tate*, 524 F.3d at 454 ("Tate does not challenge the accuracy of any affirmative statement made by Agent Manners in his affidavit.").

It seems, although Defendant does not expressly say so, that he is suggesting that Detective Nice made up this observation and, knowingly and intentionally or with reckless disregard for the truth, relayed it to Detective Peters despite its falsity because Detective Nice knew it was the only fact in the affidavit connecting Lindsey to 1912 B Orvid Street. The Government contends that Defendant has not made a substantial showing of a false statement because Defendant provides only photos and an affidavit, secured ten years after the crime was

7

committed, which represent nothing more than a disagreement about the facts contained in the incident reports and affidavit made by the detectives. As such, the Government argues that there is no direct allegation relating to the detectives, just an inference from which Defendant concludes that the detectives are lying or had to commit a trespass to observe him.

At the hearing, Detective Nice stated that he had no memory of this incident ten years ago, and his recollections are based solely on the information in the incident reports and search warrant application. Walsh asked him where his vehicle was parked when he was doing surveillance, and he stated that he would have parked "across the street, directly in front of the house." Mar. 19, 2013 Hearing Tr. at 43. Walsh then showed Detective Nice a picture taken while standing directly in front of 1912 Orvid Street—where one cannot see any part of the front door to 1912 B Orvid Street—and asked him if the picture looked familiar to him. *See* ECF No. 47, Exh. 5. He replied: "That would be my view from directly in front of the house across the street, yes, ma'am." *Id.* He also confirmed that he did not walk up the driveway or enter the property in any way. *Id.* When asked about the procedure for conducting surveillance, he testified that he normally observes a residence from inside a vehicle and relays his observations over the radio to another Detective and that "from reading this report, a sample of that would possibly be in the effect of target is leaving the residence, getting inside of his vehicle, driving in a blue vehicle turning left on to Spruill." *Id.* at 44. On cross-examination by Assistant United States Attorney Nathan Williams, Detective Nice stated that "[i]f [he] saw someone leaving from the direction of a residence, getting into a vehicle, [he] would say that party is leaving the residence, which is the area, getting into the vehicle and exiting area." *Id.* at 55. He further stated that if he had more detail from his observations, he would give the exact detail. *Id.* Additionally, and perhaps most notably, after being asked if those terms "leave the residence . . .

mean you saw [one] open the door and walk out," Detective Nice responded: "No it does not." *Id.* at 56.

The Court finds that Defendant failed to show that this allegedly false statement was made knowingly and intentionally or with reckless disregard for the truth. Based on the testimony of Detective Nice, if he had seen Defendant leave via the front door of the back residence, he would have explicitly stated as much over the radio to Detective Peters. Instead, he stated that he observed a black male, who was later identified as Harold Lindsey, Jr., leave the above residence, which he further testified that he believes is a truthful statement if one observed a person leave the area of the residence. Had the affidavit stated that Detective Nice observed Defendant walk out the front door of 1912 B Orvid Street, the Court's conclusion may be different. But, here, the testimony of Detective Nice does not lead the Court to the conclusion urged by Defendant, namely that Detective Nice's statement, as recorded by Detective Peters in the affidavit, was either recklessly or intentionally untruthful so as to have misled the Magistrate. *See United States v.* Greene, 250 F.3d 471, 478-79 (6th Cir. 2001) (courts do not require a hypertechnical reading of the affidavit, rather a commonsense approach is recommended). The Court finds the testimony of Detective Nice that the Defendant was in fact seen by him leaving 1912 B Orvid Street on the occasion alleged in the affidavit credible.

    **B.**    **Suppression of Evidence**

        **1.**    <u>**Particularity Requirement of the Fourth Amendment**</u>

Defendant argues that the search warrant is invalid on its face because it does not satisfy the particularity requirement of the Fourth Amendment. As such, the fruits of the search must be suppressed. The Court disagrees.

9

The Fourth Amendment provides that search warrants will not issue unless they particularly describe the place to be searched. *United States v. Owens*, 848 F.2d 462, 463 (4th Cir. 1988). Evidence seized in violation of this requirement is subject to suppression pursuant to the judicially created exclusionary rule. *Id. See Weeks v. United States*, 232 U.S. 383, 398 (1914). A warrant satisfies the particularity requirement if the description enables an officer to ascertain and identify the place to be searched with reasonable effort. *Owens*, 848 F.2d at 463. Accordingly, "[a]n erroneous description . . . does not necessarily invalidate a warrant and subsequent search." *Id.* Moreover, "[a]s a general rule, a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity 'if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.'" *United States v. Hurwitz*, 459 F.3d 463, 470-71 (4th Cir. 2006) (citing *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2002)). Since *Groh*, the Fourth Circuit has held that "[i]n this circuit, however, it is sufficient *either* for the warrant to incorporate the supporting document by reference *or* for the supporting document to be attached to the warrant itself." *Hurwitz*, 459 F.3d at 471 (emphasis in original).

Here, the search warrant cross-references an affidavit by stating: "It appearing from the attached affidavit . . . ." *See* ECF No. 47, Exh. 3. As such, the warrant expressly incorporated the affidavit. Moreover, as noted by the Government, Lindsey does not argue that the affidavit was not attached to the warrant. Instead, he argues that the warrant is invalid on its face because it does not contain a description of the premises to be searched or a description of the property, despite the fact that the warrant itself states, "DESCRIBED ON THE FACE OF THIS WARRANT" in the sections of the warrant for these descriptions. So, he contends that because the warrant makes this statement in these sections, the warrant fails to incorporate by reference

10

the premises to be searched and items to be seized as described in the affidavit. Thus, because the warrant omits any description of the premises or property, it does not satisfy the particularity requirement of the Fourth Amendment.

The Government argues that where the affidavit is attached to the warrant, "Described on the face of this warrant" appears to indicate that the affiant believes that the affidavit is simply part of the warrant. Further, based on language used—"face of this warrant"—the affiant was just "attempting to use proper legal language, even if the [D]efendant does not agree with its appropriateness." Gov't's Resp. 6.  Ultimately, the Government states that this language is very similar to the generally accepted language "See Attached Affidavit," and therefore, this argument is without merit.

Although Lindsey's argument is very creative, the Court is not persuaded.  As noted above, the warrant incorporated the affidavit; therefore, the warrant application embodies both documents and treats the affidavit and the warrant as one in the same. *See Hurwitz*, 459 F.3d at 470-71 (holding that an affidavit is considered part of a warrant if incorporated).  More importantly, the attached affidavit describes the premises and items to be seized from 1912 B Orvid Street with sufficient particularity.  Although "Described on the face of this warrant" may not be technically correct, based on the fact that the warrant references an attached affidavit wherein such descriptions are in fact made, the warrant incorporated the affidavit's descriptions. In hindsight, it would have been better for the affiant to have used the generally accepted language—"See Attached Affidavit"—in these sections; however, the Court finds it inappropriate to invalidate a warrant for what may have been either carelessness or an honest belief that this language is similar enough to the generally accepted language.

11

Lindsey also points out that in the affidavit, Detective Peters describes the premises to be searched as "1912 B Orvid Street," twice, but then indicates that "1812 B" is affixed to the front window frame. He states that this property has never had the number "1812 B" affixed to the window frame and that there is a nearby residence whose address is 1812 Orvid Street. Although Lindsey does not expressly say so, he seems to be arguing that the warrant is invalid because the wrong address is listed in the warrant application. This argument, however, fails as well.

The particularity requirement of the Fourth Amendment tests whether "the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).  Furthermore, "[a]n erroneous description in the warrant . . . does not necessarily invalidate a warrant and subsequent search." *United States v. Owens*, 848 F.2d 462, 463 (4th Cir. 1988).  Despite containing the wrong street number in the sentence discussing what was seen affixed to the residence's window frame,[5] the description of the premises in the affidavit was sufficient to direct the Detectives to the correct residence, especially when coupled with the fact that the affidavit did accurately state the street address two other times. *See id.* at 466 (declining to invalidate a warrant with an incorrect apartment number because "the deficiency was corrected by personal observations and information on which one could reasonably and in good faith make a determination of the actual place the warrant authorized to be searched"); *United States v. Henry*, No. 96-4951, 1988 WL 386113 (4th Cir. June 19, 1998) (upholding warrant although street number was not accurate because description of the house in the warrant was sufficient) (unpublished per curiam opinion).  Moreover, in looking at the picture of 1812 Orvid Street that was filed with the Court, it is unlikely that there

---

[5] At the hearing, Detective Peters testified that this was a typo. *See* Mar. 19, 2013 Hearing Tr. at 66.

would be any confusion as to which residence was intended to be searched, 1812 or 1912 B Orvid Street. 1812 Orvid Street is a two story residence and the description of the premises to be searched in the affidavit is "a single story, single family dwelling . . . ." ECF No. 47, Exh. 4. Therefore, the Court finds that an officer with this affidavit would be able to, with reasonable effort, correctly identify 1912 B Orvid Street as the residence intended to be searched.

### 2. Nexus

Defendant also argues in his supplemental motion that the affidavit does not establish probable cause because it does not establish a nexus between 1912 B Orvid Street and the drug activity.

In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched. *United State v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993). In *United States v. Anderson*, the Fourth Circuit adopted the rule that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inference of where one would likely keep such evidence." 851 F.2d 727, 729 (4th Cir. 1988), *cert. denied*, 488 U.S. 1031 (1989). The *Anderson* Court held that probable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location. *See id.* The Fourth Circuit has also stated that "[t]his nexus may be established, for example, by information *or surveillance of a residence* linking the residence to drug activity, such that it is reasonable to believe that evidence of drug activity will be found at the residence. *United States v. Randolph*, No. 06-4922, 2008 WL 154460, at *3 (4th Cir. Jan. 17, 2008) (emphasis added).

Specifically, Lindsey contends that there is no nexus because the affidavit does *not* state (1) that the premises to be searched is his residence; (2) that the car is registered to him, to 1912 Orvid Street, or owned by someone who lived at 1912 Orvid Street, (3) that he was at the premises when the drugs were ordered for the controlled buy; or (4) that the drugs were ordered from him.

Although it is true that affidavit did not expressly contain those statements in (1), (2), (3),[6] and (4) above, this is not to say that it does not contain facts connecting the evidence sought—items of drug trafficking in this case—to 1912 B Orvid Street. The affidavit describes an incident where the Charleston County Metro Major Case Unit used a CI to order up drugs, and thereafter, Charleston County Detectives observed Defendant leave 1912 B Orvid Street and drive to the site of the controlled buy. To establish probable cause, "the affidavit must have indicated *why* evidence of illegal activity would be found at the particular place to be searched"—1912 B Orvid Street. *United States v. Bautista*, No. 5:11-cr-42, 2012 WL 1014995, at *2 (W.D. Ky. Mar. 22, 2012) (emphasis added). Mindful that it is to accord "great deference on review" to a magistrate's finding of probable cause, the Court finds the affidavit does so. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1982).

Unlike in *United States v. Fraizer*, 423 F.3d 526 (6th Cir. 2005),[7] the affidavit in this case does not rely solely on the uncorroborated testimony of a CI to establish a connection

---

[6] The Court notes, however, that a common sense reading of the affidavit narrative implies that the Defendant was at the residence in question when the drugs were ordered up by the CI.

[7] The *Frazier* Court held that when "the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants . . . the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *United States v. Fraizer*, 423 F.3d 526, 533 (6th Cir. 2005).

between Lindsey and 1912 B Orvid Street. Instead, like in *United States v. Gunter*,[8] the affidavit describes how law enforcement detectives observed Defendant leave 1912 B Orvid Street and travel to the site of the controlled buy where Defendant was apprehended with drugs on his person.  Moreover, the affidavit contains the affiant's statements that he is a trained drug investigator and that it is his belief that 1912 B Orvid Street is being used to facilitate a drug enterprise.  It is based on these statements and the evidence above that the Court finds a sufficient nexus is established between Defendant's illegal drug activities and 1912 B Orvid Street.  Based on the totality of the circumstances, the magistrate could reasonably infer that evidence of drug activity would be found at 1912 B Orvid Street. *Cf. United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (no nexus where the affidavit failed to "describe circumstances that indicate such evidence [of drug activity] was likely to be stored at Lalor's residence"), *with Gunter*, 266 F. App'x at 419 (nexus established where the affidavit described "the investigating law enforcement agent's experience in narcotic investigations" and "the agent's observation of Defendant visiting his residence right before he traveled to the site of a drug sale"), *and United States v. Hargis*, No. 02-4064, 2002 WL 1336658, at *1 (4th Cir. June 19, 2002) (unpublished per curiam opinion) (finding probable cause where "an officer opined, based on his training and experience, that street-level dealers frequently store drugs in their homes," and defendant "was observed on more than one occasion going back and forth between the same two locations: his house and Garrison Avenue, the location of his drug dealing").

---

[8] In *Gunter*, agents observed defendant visit his residence right before he traveled to the site of a drug sale. *United State v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008).   The court held that "[t]his visit provided a neutral magistrate with a substantial basis to conclude that Defendant may have stopped at his residence to pick up some of his merchandise before meeting his customer at another location." *Id.*

15

Lindsey also states that the affidavit "omits the information, per the incident report, that the Defendant left the area of the residence and went somewhere else first, before going to the designated location for the controlled buy." Def.'s Supp. Motion 3. He argues that if this information were included, probable cause would not exist. After reviewing the incident report, the transcript from the hearing held on April 16, 2013, and the applicable case law, the Court finds this argument lacks merit.

The incident report states, in relevant part:

> . . . The confidential informant told "Baller" he/she was en route and would call again when closer. The confidential informant and a Detective acting in an undercover capacity traveled to the area of Spruill Avenue and Token Street.
> While the two where [sic] en route Detective Nice advised that a black male was exiting what was found to be 1912-B Orvid Street and entering the Lincoln. The Lincoln **turned left onto Spruill Avenue from Orvid Street.** Once the confidential informant and undercover Detective were in the area, the confidential informant again phone[d] "Baller" as discussed. "Baller," being kept under Metro surveillance, advised that he was in the area of Spruill Avenue and Reynolds Avenue and would be en route. The light blue Lincoln then began traveling on Spruill Avenue towards Token Street from the direction of Reynolds Avenue.

*See* ECF No. 47, Exh. 1 (emphasis added). At the hearing, Walsh, through the aid of Google maps,[9] explained that *if* Defendant had gone straight to the controlled buy after leaving 1912 B Orvid Street, he would have turned *right*, not left, onto Spruill Avenue. A right turn provides for the most direct route to the location of the controlled buy, the Chinese restaurant, which is located at 2938 Spruill Avenue (near Spruill Avenue and Token street). The incident report shows that Defendant did not take the most direct route to the restaurant after he left 1912 B Orvid Street; instead, he drove around the area of Spruill and Reynolds Avenue. Notably,

---

[9] *See* Def.'s Exh.'s. 18, 19.

16

however, there is no evidence indicating that Defendant stopped at another residence or even exited his vehicle prior to his arrival at the restaurant, an act that would presumably break the causal link supporting the inference the drugs would likely be found at 1912 B Orvid Street. Moreover, based on the incident report, Defendant was told that he would be receiving another call from the CI prior to meeting up. Thus, it appears that Defendant, while waiting for the CI's second call, was simply stalling.[10] This conclusion is further supported by the fact that Defendant remained in close proximity to the restaurant—about a third of a mile away. Significantly too, the restaurant is only 0.3 miles from 1912 B Orvid Street, according to the Google map Defendant submitted to the Court. *See State v. Kahn*, 555 N.W.2d 15, 18 (Minn. App. 1996) (holding that probable cause did not exist to link possible contraband or evidence in the defendant's home with his arrest over 75 miles away for possession of one ounce of cocaine). Additionally, the Court notes that Defendant was kept under metro surveillance the entire time. Had Defendant's activities departed significantly from the pre-determined plan, such facts would have been included in the incident report. Accordingly, the Court finds no evidence that a material fact was omitted such that probable cause does not exist. Given the commonsense inferences that can be drawn under the circumstances, the Magistrate properly concluded that drugs would likely be found at 1912 B Orvid Street.

### C.   Good Faith Exception

Alternatively, the good faith exception would apply to save the search if the warrant is invalid. Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if "the officers were dishonest or reckless in

---

[10] The Court notes that it would have been better practice for the detectives to have included the time frame surrounding this entire incident, specifically the elapsed time between the CI's first and second call to Defendant. However, based on the testimony at the March 19, 2013 hearing, it is evident that this entire incident occurred very quickly. *See* Mar. 19, 2013 Hearing Tr. at 48-49.

preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). The parties do not address whether this exception applies in their motions.

Taking into consideration everything within the four corners of the affidavit, the detectives conducting the search of Defendant's home exercised good faith and acted in objectively reasonable reliance on the warrant's legality. The affidavit establishes that Defendant was observed by Charleston County detectives leaving 1912 B Orvid Street and that Defendant proceeded in a timely manner to the nearby location for the controlled buy. Contraband was then found on his person during a search incident to arrest. The affidavit also includes the affiant's belief, as a trained drug investigator, that 1912 B Orvid Street was being used to facilitate a drug enterprise. Under these circumstances, it is unlikely the detectives acted with sufficient recklessness or disregard. *Cf. Bautista*, 2012 WL 1014995, at *3 (finding that there is not even a "modicum of evidence" linking defendant's criminal activity with the searched lot such that "[n]o reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable"). The Court is also cognizant of the fast moving pace in which this incident arose, as testified to by the detectives who worked on the case. *See* Mar. 19, 2013 Hearing Tr. at 67. As such, the Court cannot conclude that the affidavit was prepared in bad faith; therefore, the good faith exception would apply.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Suppress Evidence is **DENIED.** The request for a *Franks* hearing was rendered moot by the hearing on the motion to suppress.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**May 24, 2013**
**Charleston, SC**